*JUDGE SCHEINDLIN*

**12 CIV 5973**

*AETNA*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MICHAEL LEVINE,

    Plaintiff,

             v.

BRUCE FIXELLE, HOWARD KRA, GENESIS
L.P. and GENESIS ADVISORY SERVICES,
INC.,

    Defendants.

---

Case No.

**COMPLAINT**



Plaintiff Michael Levine ("Plaintiff" or "Mr. Levine"), by his attorneys, The Roth Law Firm, PLLC, hereby alleges the following against Defendants Bruce Fixelle ("Fixelle"), Genesis Advisory Services, Inc. ("GAS"), Genesis L.P. ("Genesis") (collectively the "Fixelle Defendants") and Howard Kra ("Kra") (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.      By this action, Plaintiff seeks damages against the Fixelle Defendants arising from the Fixelle Defendants' fraud, deceit, illegal and tortious conduct and acts, as well as the Fixelle Defendants' breach of contract and the duty of good faith and fair dealing. In addition, Plaintiff seeks damages against Bruce Fixelle and Howard Kra, based on their default in the payment of a promissory note in the amount of $1,500,000. Further, Plaintiff seeks damages against Genesis as a guarantor of the above mentioned promissory note.

## PARTIES

2.      Plaintiff is a citizen of the State of New York who resides in Westchester County, New York.

3.     Upon information and belief, Defendant Genesis is a limited partnership organized and existing under the laws of the State of Florida with its principal place of business in the State of New Jersey.

4.     Upon information and belief, Defendant GAS is a corporation organized and existing under the laws of the State of Florida with its principal place of business in the State of New Jersey.

5.     Upon information and belief, Defendant Fixelle is a citizen of the State of New Jersey.

6.     Upon information and belief, Defendant Kra is a citizen of the State of Maryland.

## JURISDICTION AND VENUE

7.     This is a civil action seeking damages for breach of contract, unjust enrichment, fraud, negligent misrepresentation and breach of the covenant of good faith and fair dealing.

8.     Personal jurisdiction is proper in this Court because Defendants transact business in the State of New York.

9.     This Court has subject matter jurisdiction over this action pursuant to diversity jurisdiction because the amount in controversy exceeds $75,000 and Plaintiff and Defendants have complete diversity of citizenship.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTS

11.     Plaintiff, his mother and his investment broker at UBS, Jeffrey Klotz, met with Fixelle in or about September or October 2009.  At this initial meeting, Fixelle

2

explained the Fixelle Defendants' trading strategy and asked Plaintiff to lend the Fixelle
Defendants monies to allow them to implement the strategy.

12.     Fixelle explained that the Fixelle Defendants' had a two part investment
strategy consisting of first trading large volumes of securities with various broker-dealers
in order to generate commissions for those broker-dealers. The Fixelle Defendants would
make these trades in order to access allocations of various new offerings. After Fixelle
and his entities developed a close relationship with select broker-dealers, he would
receive preferential treatment when those firms had new offerings ("New Offering").
Thereafter, according to Fixelle, as part two of this unique investment strategy, the
Fixelle Defendants would be offered and purchase select positions in New Offerings and
would immediately sell the New Offering when it came to market. The Fixelle
Defendants guaranteed that this was a foolproof strategy that yielded minimum risk.

13.     During the meeting, the Fixelle Defendants explained to Plaintiff that they
would only use his money to purchase the allocations of the New Offerings and that the
New Offerings would be sold at the end of every trading day. That is, because those New
Offerings were sold that same day, every evening Plaintiff's monies would be exclusively
in cash. The process of the Fixelle Defendants unique strategy of trading, as explained
by Fixelle to Plaintiff is referred to herein as the "Trading Strategy". Thus, each trade
that the Fixelle Defendants made was liquidated at the end of each trading day.

14.     Plaintiff loaned monies to Defendants based upon Defendant's statements
that the monies were to be utilized *only* for this foolproof Trading Strategy. Little did
Plaintiff know that the Fixelle Defendants' representations were false and that the Fixelle
Defendants were investing Plaintiff's money in other ways without his authorization,

3

knowledge or consent. Specifically, Plaintiff was never informed that the Fixelle

Defendants did not sell all of the securities each trading day, but engaged in a risky

strategy that could cause substantial losses.

15.     On or about, October 5, 2009, Fixelle and Kra (the "Borrowers") executed

a Promissory Note (the "Note") in favor of Plaintiff which provided that Fixelle and Kra

were to pay Plaintiff $1,500,000 upon demand. In addition, the Note called for interest of

12% a year until the principal was paid back. The Note further provided for an additional

6% interest upon default by Borrowers which survives the entry of any judgment. The

Note also provided that Borrowers agree to pay all costs of enforcement of the Note

including but not limited to all court costs and attorneys' fees. A copy of the Note is

annexed hereto as Exhibit "A".

16.     On or about, October 5, 2009, in connection with the same loan, Genesis

executed an Agreement of Guaranty (the "Guaranty") in favor of Plaintiff. Pursuant to

the Guaranty, Genesis personally guaranteed the debt of the Borrowers under the Note.

The Guaranty also provided that Genesis agreed to pay all costs and expenses in

enforcement of the Note including but not limited to court costs and attorneys' fees. A

copy of the Guaranty is annexed hereto as Exhibit "B".

17.     From November 12, 2009, to October 4, 2011, Plaintiff received interest

payments.

18.     On or about February 2, 2010, the Fixelle Defendants asked Plaintiff to

lend them more money for use in implementing the Trading Strategy. Plaintiff agreed to

lend the Fixelle Defendants additional sums because they were receiving interest

payments on the loan and on Fixelle's continued representations that the money would be used pursuant to the Trading Strategy.

19.     The Fixelle Defendants specifically asked for $2,000,000. Plaintiff transferred $2,000,000 to the Fixelle Defendants on or about February 2, 2010, after he was assured that the monies loaned would be employed consistent with the prior monies loaned.

20.     On or about June 8, 2010, the Fixelle Defendants again requested to borrow additional funds from Plaintiff. Plaintiff again agreed to lend the Fixelle Defendants money premised on the Fixelle Defendants' representation that this money was to be used pursuant to the Trading Strategy.

21.     Accordingly, on or about June 8, 2010, Plaintiff transferred $1,500,000 to the Fixelle Defendants.

22.     On or about March 9, 2011, the Fixelle Defendants again asked to borrow additional funds from Plaintiff. Plaintiff again agreed to lend the Fixelle Defendants money to be used pursuant to the Trading Strategy.

23.     Accordingly, after Plaintiff was assured that the monies were to be used pursuant to the Trading Strategy, on or about March 9, 2011, Plaintiff transferred $1,000,000 to the Fixelle Defendants.

24.     On or about March 22, 2011, the Fixelle Defendants repaid Plaintiff $1,000,000.

25.     On or about March 30, 2011, the Fixelle Defendants again asked to borrow additional funds from Plaintiff. Plaintiff agreed to lend the Fixelle Defendants money to be used pursuant to the Trading Strategy.

26.     Accordingly, after Plaintiff was assured that the monies were to be used pursuant to the Trading Strategy, on or about March 30, 2011, Plaintiff transferred $500,000 to the Fixelle Defendants.

27.     From on or about July 18, 2011, to November 18, 2011, the Fixelle Defendants repaid Plaintiff $3,000,000.

28.     In or about November 2011, the Defendants began missing interest payments on all of the loans.

29.     Commencing in or about December 2011, Plaintiff became concerned that the Defendants were not repaying their debts as they came due.

30.     Commencing in December 2011, Plaintiff expressed this concern to the Fixelle Defendants numerous times.

31.     In or about December 2011, Plaintiff demanded return of all of his monies.

32.     In response to Plaintiff's concerns, Fixelle admitted that he "bet wrong" and changed his Trading Strategy without telling Plaintiff. Specifically, Fixelle asked for a meeting with Plaintiff. In the meeting at Plaintiff's home, Fixelle informed Plaintiff that he did not use the Trading Strategy. Fixelle explained that he did not always sell the position at the end of the day. Fixelle further explained that he had taken a large position in AON that he never unwound. Indeed, he went on to explain that, rather than sell the security at the end of the Trading Day, he actually "doubled down" on the risk, kept the position open and had one-half of his investments "wiped out."

33.     In response, Plaintiff asked Fixelle how he could engage in such conduct in light of his continued representation that he held only cash at the end of each day.

6

Fixelle's response was merely "I am sorry." Plaintiff simply asked Fixelle how he planned on paying back of all of his money.

34.     Thereafter the parties engaged in an email exchange. In one email, Fixelle confirmed, on February 4, 2012, that "[m]y business model should have been idiot proof but I made mistakes."

35.     From the date of that demand to this day, the Defendants have refused to pay back the debts owed to Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

36.     Plaintiff repeats and realleges the above paragraphs as if fully stated herein.

37.     Plaintiff agreed to lend the Fixelle Defendants and Kra monies.

38.     Plaintiff, Fixelle and Kra executed a promissory note to that effect.

39.     In connection with the signing of the promissory note, Genesis executed a guarantee guarantying the promissory note in favor of Plaintiff.

40.     Additionally, after the promissory note was executed the Fixelle Defendants borrowed numerous additional amounts from Plaintiff.

41.     Again, the Fixelle Defendants acknowledged that they were to pay these monies back with interest.

42.     Defendants began missing interest payments and Plaintiff demanded the return of his money.

43.     Defendants refused to pay the money back thereby breaching the promissory note and the promise to pay back the additional borrowed monies.

44.     As a result of the Fixelle Defendants and Kra's breach, Plaintiff has suffered and will continue to suffer damages in an amount thus far not determined, but believed to be at least $2,500,000 plus interest, costs, attorneys' fees and punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT

45.     Plaintiff repeats and realleges the above paragraphs as if fully stated herein.

46.     The Fixelle Defendants agreed to repay all of the monies that they borrowed.

47.     The Fixelle Defendants are currently indebted to Plaintiff for the unpaid loans in the total amount of $2,500,000.

48.     Despite demand, the Fixelle Defendants have failed and refused to pay Plaintiff the entire amount due and owing.

49.     As a result of the Fixelle Defendants' breach, Plaintiff has suffered and will continue to suffer damages in an amount thus far not determined, but believed to be at least $2,500,000 plus interest, costs, attorneys' fees and punitive damages.

## AS FOR A THIRD CAUSE OF ACTION
### FRAUD

50.     Plaintiff repeats and realleges the above paragraphs as if fully stated herein.

51.     The Fixelle Defendants' fraudulent misrepresentations, conduct, and active concealment were calculated to convey the misleading impression to Plaintiff that

the Fixelle Defendants were following the Trading Strategy, when in fact the Fixelle
Defendants, as evidenced by their conduct, did not do so.

52.    Said misconduct was material.

53.    The false representations, conduct and active concealment of the Fixelle
Defendants was intended to induce Plaintiff to act in reliance upon these
misrepresentations.

54.    Plaintiff justifiably relied on the false representations, conduct and active
concealment of the Fixelle Defendants by entrusting them to borrow the money to utilize
in their Trading Strategy.

55.    As a result of the Fixelle Defendants' fraud, Plaintiff has suffered and will
continue to suffer damages in an amount thus far not determined, but believed to be at
least $2,500,000 plus interest, costs, attorneys' fees and punitive damages.

## AS FOR A FOURTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

56.    Plaintiff repeats and realleges the above paragraphs as if fully stated
herein.

57.    At all times mentioned herein, and as set forth above, the Fixelle
Defendants engaged in an unlawful course of conduct in which they made negligent
misrepresentations and/or omissions of material facts.

58.    Plaintiff was concerned with what purpose the Fixelle Defendants were
using the money. The Fixelle Defendants explained numerous times that the money was
to be utilized only for their Trading Strategy. Plaintiff relied on these statements when he
lent the money to the Fixelle Defendants.

59.     As a result of the Fixelle Defendants' negligent representation, Plaintiff has suffered and will continue to suffer damages in an amount thus far not determined, but believed to be at least $2,500,000 plus interest, costs, attorneys' fees and punitive damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

60.     Plaintiff repeats and realleges the above paragraphs as if fully stated herein.

61.     By virtue of the foregoing conduct, the Fixelle Defendants have acted in bad faith in performing their obligations under the implied contract and during the course of dealings with the payment of the monies that were allocated for the Fixelle Defendants' Trading Strategy. Accordingly, the Fixelle Defendants have breached the implied covenant of good faith and fair dealing.

62.     As a result of the Fixelle Defendants' breach, Plaintiff has suffered and will continue to suffer damages in an amount thus far not determined, but believed to be at least $2,500,000 plus interest, costs, attorneys' fees and punitive damages.

**WHEREFORE**, Plaintiff respectfully seeks Judgment in this matter as indicated in the Causes of Action herein, together with any further relief that the Court deems just and proper.

DATED:     New York, New York
             July 30, 2012

THE ROTH LAW FIRM, PLLC

By: _____
      Richard A. Roth, Esq.
295 Madison Avenue, 22nd Floor
New York, New York 10017
Tel: (212) 542-8882
*Attorneys for Plaintiff*

# EXHIBIT A

PROMISSORY NOTE

$1,500,000.00                                        ~Woodcliff Lake~New Jersey
                                                     Oct 5      , 2009

     FOR VALUE RECEIVED, **BRUCE FIXELLE**, having an address at 5 Cherry Hill Ct,
Hillsdale, NJ 07642 and **HOWARD KRA**, having an address at 9115 Burning Tree Rd,
Bethesda, MD, (hereinafter collectively referred to as "Borrower") hereby promises to pay to
_____, (hereinafter referred to as "Lender"), at the following
address_____, and any other address from time
to time designated by Lender in writing for payment, the principal sum of **ONE MILLION
FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($1,500,000.00)** in United States
currency and to pay interest on the unpaid balance from the date of this Note at the rate set forth
below until paid according to the following terms and conditions:

     1. Term. The indebtedness evidenced by this note ("Note") shall be due and payable in
full (the "Maturity Date") UPON DEMAND at the option of the Lender who shall provide ten
days written notice of such demand.

     2. Guarantor. As an inducement to the Lender to make the Loan to Borrower, the Lender
has required that Genesis, a limited partnership, (hereinafter referred to as "Guarantor"), who
will directly or indirectly benefit from the Loan, personally and unconditionally hereby
guarantees the Note, on a joint and several basis, the full, prompt and unconditional payment
when due of any obligations of the Borrower due and owing to the Lender in connection with the
Note, and the full and complete performance of all other obligations of the Borrower with respect
to the Note.

     3. Interest Rate and Payment. During the Term Interest shall accrue and interest only
shall be payable at the annual rate of TWELVE PER CENT (12%). During the Term, payments
of interest shall be made in equal consecutive monthly installments on the 1st day of each month
until the Maturity Date, on which date the entire outstanding principal of this Note, all accrued
and unpaid interest due under this Note and all other sums owing under this Note shall be due
and payable in full.

     4. Application of Payments. Payments received under this Note (including prepayments)
shall be applied first to accrued interest and then to installments of principal, in inverse order of
their maturity dates. Notwithstanding the previous sentence, Lender shall have the option to
apply any payment received under this Note first to any collection or other expenses or charges
to which Lender may be entitled under this Note.

     5. Legal Effect of Promise. Borrower shall have no right to fail, neglect, offset or refuse
to make any payments under this Note by reason of any claim, demand or suit of any nature or
kind alleged to exist against Lender. Any such suit, claim or demand shall be made in an
independent, legal action during which all payments on this Note shall and must continue
unabated.

6. <u>Default</u>. Borrower shall be in default under this Note if any payment under this Note is not received by Lender within ten (10) days of the date that payment is due. The Borrower further agrees that this Note shall be in default, in the event that the Borrower, any guarantor or any of the persons or parties constituting the borrower or a guarantor shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under title 11 of the U.S. Code, as amended ("Bankruptcy Code"), (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any resent or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator, or (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any resent or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, the Lender shall thereupon be entitled and the Borrower irrevocably consents to immediate and unconditional relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to the Lender as provided for herein, in the Note, other loan documents delivered in connection herewith and as otherwise provided by law, and the Borrower hereby irrevocably waives any right to object to such relief and will not contest any motion by the Lender seeking relief from the automatic stay and the Borrower will cooperate with the Lender, in any manner requested by the Lender, in its efforts to obtain relief from any such stay or other prohibition. Borrower shall be in default under this Note if it fails to honor any other obligation it has to Lender under this Note or any other loan document associated with the loan herein referenced.

7. <u>Remedies</u>. Upon the occurrence of any default, Lender may exercise any rights and remedies available at law or in equity or with respect to any collateral for this Note. Lender's remedies also include the right to declare all principal, interest and other sums outstanding under this Note to be immediately due and payable in full, to increase the rate of interest as provided in this Note, to collect all sums owing from Borrower or from Guarantor, and to execute upon all security interests and assignments provided in any other document executed in connection with this Note. Lender's delay or failure to accelerate this Note or to exercise any other available right or remedy shall not impair any such right or remedy, nor shall it be construed as a forbearance or waiver.

8. <u>Default Rate of Interest</u>. Upon the occurrence of a default, in addition to all of its other rights and remedies, Lender may increase the rate of interest at which the outstanding balance under this Note shall accrue and be payable. The increase in the interest rate shall be effective as of the date of the occurrence of the default. The default interest rate shall be calculated so that Borrower will pay interest on the unpaid principal sum at the annual rate Six Percent (6%) above the fixed rate set forth in Paragraph 1 of this Note. The default interest rate shall survive the entry of any judgment relating to this Note.

9. <u>Costs and Expenses of Collection</u>. Borrower agrees to pay all costs of enforcement of this Note or which arise out of any default in the payment obligations of this Note, or any other default in any other term of any other document executed simultaneously herewith, including

reasonable attorney's fees and court costs, whether suit be brought against Guarantor or not.

10. <u>Governing Law and Jurisdiction</u>. This Note shall be governed by, and construed in accordance with the laws of the State of New Jersey. Borrower hereby consents to the exclusive jurisdiction of the federal and state courts of the State of New Jersey with respect to all matters arising under or relating to this Note or any documents executed in connection herewith.

11. <u>Severability</u>. If any term or provision of this Note is held to be invalid, the remaining teams and provisions of this Note shall not be affected and shall remain in full force and effect.

12. <u>Interest in Excess of Permitted Rate</u>. If any provision of this Note relating to the rate of interest is in violation of any law in effect at the time payment is due, the interest rate then in effect, shall be automatically reduced to the maximum rate then permitted by law and Borrower consents that such a reduction will avoid any defense that Borrower may assert to the Note being enforceable at law or equity. If Lender should ever receive as interest an amount that would exceed the highest lawful rate of interest, the amount that would exceed that highest lawful rate shall be credited against principal and not the payment of interest.

13. <u>Binding Nature</u>. The Note shall be binding on Borrower and its, his, her or their heirs or successors and assigns. This Note shall be for the benefit of Lender and its successors and assigns. The term "Lender" in this Note shall refer to the Lender identified above, or to any other future holder of this Note. For purposes of this Note, the term "Borrower" as used herein shall mean each Borrower named in the caption of this Note.

14. <u>Joint and Several Liability</u>. Each Borrower and Guarantor shall be jointly and severally liable for all sums owing under this Note.

15. <u>JURY TRIAL WAIVER</u>. Borrower hereby waives presentment, demand, protest, notice of protest, diligence, and all other demands and notices in connection with the payment and enforcement of this Note. BORROWER HEREBY WAIVES ANY RIGHT TO REQUEST A TRIAL BY JURY IN ANY LITIGATION WITH RESPECT TO THIS NOTE AND REPRESENTS THAT COUNSEL HAS BEEN CONSULTED SPECIFICALLY AS TO THIS WAIVER By accepting this Note, Lender also waives its right to request a trial by jury.

IN WITNESS WHEREOF, Borrower has caused this Note to be duly executed on the date first above written.

CATHY J. FOY
Notary Public of New Jersey
Passaic County
My Commission Expires February 14, 2013

WITNESS OR ATTEST:

Borrower:

_____

_____
BRUCE FIXELLE

Borrower:

_____

_____
HOWARD KRA

DAVIS KIYONAGA
Notary Public-Maryland
Montgomery County
My Commission Expires
October 29, 2011

# EXHIBIT B

## AGREEMENT OF GUARANTY

THIS AGREEMENT OF GUARANTY made as of this ___ day of _OCT____, 2009 between Genesis, a limited partnership, (hereinafter referred to as "Guarantor") in favor of _____, (hereinafter referred to as "Lender") having an address of _____ _____, and it is hereby agreed as follows:

### WITNESSETH:

WHEREAS, pursuant to a certain Promissory Note dated _____, 2009 in the aggregate principal amount of ONE MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($1,500,000.00) (the "Note"), duly executed by Bruce Fixelle and Howard Kra (hereinafter collectively referred to as "Borrowers"), and delivered to the Lender, as the payee, the Lender has agreed, subject to the terms and conditions specified therein, to make a commercial loan to the Borrowers (hereinafter said $1,500,000.00 loan shall be referred to as the "Loan"); and

WHEREAS, as an inducement to the Lender to make the Loan to the Borrowers, the Lender has required that the Guarantor, who will directly or indirectly benefit from the Loan, personally and unconditionally enter into and execute this Agreement of Guaranty, hereby guarantying, on a joint and several basis, the full, prompt and unconditional payment when due of any obligations of the Borrowers due and owing to the Lender in connection with the Loan, and the full and complete performance of all other obligations of the Borrowers with respect to the Loan;

NOW, THEREFORE, IN CONSIDERATION OF THE LOAN MADE TO THE BORROWERS AND WITH KNOWLEDGE THAT THE LENDER WOULD NOT MAKE THE LOAN BUT FOR THE PROMISES OF THE GUARANTOR HEREUNDER, THE GUARANTOR HEREBY ABSOLUTELY AND UNCONDITIONALLY, REPRESENT, WARRANT AND COVENANT AS FOLLOWS:

1. The Guarantor hereby irrevocably guarantees the full, prompt and unconditional payment when due, of each and every Obligation of the Borrowers owing to the Lender in connection with the Loan, when and as the same shall become due, whether at the stated maturity date, by acceleration or otherwise, and the full, prompt, and the unconditional performance of each and every term and condition of any transaction to be kept and performed by the Borrowers under the Note and the other Loan Documents. This Agreement of Guaranty is a primary obligation of the Guarantor and shall be a continuing inexhaustible Agreement of Guaranty. In the event any of the Liabilities of the Borrowers shall not be paid according to their terms, the Guarantor shall immediately pay the same, this Agreement of Guaranty being a guaranty of full payment and not collectibility.

2. The term "Obligation of the Borrowers" or "Liabilities of the Borrowers" shall include all liabilities and obligations of the Borrowers owed to the Lender or to be performed or complied with by the Borrowers in connection with the Loan, whether direct or indirect, absolute or contingent, joint or several, now or hereafter existing, due or to become due, to, and all liabilities and obligations of any successor of the Borrowers owed to the Lender in connection with the Loan, whether direct or indirect, absolute or contingent, joint or several, now or hereafter existing, due or to become due, to, or held by, the Lender.

3. The Guarantor shall have unconditional, absolute and unlimited Obligation for the Liabilities of the Borrowers, including repayment of the full amount of the Loan and all actual costs and expenses incurred by the Lender relating to the Loan, if: (a) the Borrowers files for protection under the U.S. Bankruptcy Code, whether voluntary or involuntary; (b) in the case of a monetary Event of Default, the Lender is delayed, hindered or interfered with in any manner by any action or omission of the Borrowers, any Guarantor, or any of their respective affiliates or agents, upon the Lender's election to pursue any of its rights or remedies available under the Loan Documents; or (c) any material representation or warranty by the Borrowers or Guarantor in connection with the financing shall prove to be false or misleading in any material respect or willfully omit to state any fact, the absence of which causes any other representation or warranty to be misleading, or any of such parties otherwise commits any fraud. In the event that the Lender elects to pursue any of its rights or remedies available under the Loan Documents,

following an Event of Default and the Borrowers' failure to cure said default in accordance with the cure provisions contained in the Loan Documents (if any), the Guarantor shall immediately have unconditional, absolute and unlimited Obligation for the Liabilities of the Borrowers, including the full amount of the Loan and all losses, costs, and expenses if the Lender is delayed, hindered or interfered with in any manner by any action or omission of the Borrowers, any Guarantor or any respective affiliates in enforcing the Lender's remedies against the Collateral as provided in the Loan Documents.

4.     Guarantor represents and warrants that neither the execution and delivery of this Agreement of Guaranty nor any other document, agreement, certificate and instrument to which he is a party or by which he is bound in connection with the Loan, nor the consummation of the transactions contemplated hereunder or thereunder or the compliance with or performance of the terms and conditions herein or therein will result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of any said Guarantor, except as permitted in or anticipated by this Agreement of Guaranty, the Note, or is prevented by, limited by conflicts with or will result in the breach or violation of or a default under the terms, conditions or provisions of: (a) any Indenture, evidence of indebtedness, loan or financing agreement, or other agreement or instrument of whatever nature to which he is a party or by which he is bound; or (b) any provision of any existing law, rule, regulation, order, writ, injunction or decree of any court or governmental authority to which said Guarantor is subject.

5.     Guarantor represents and warrants that he is not party to any action, suit, proceeding, inquiry, hearing or investigation pending, or within the best of their knowledge, after due inquiry and investigation, threatened, in any court of law or in equity, or before or by any governmental authority wherein there is a reasonable probability that an unfavorable determination, decision, decree, ruling or finding would: (a) result in any material adverse change in the business, assets, liabilities, financial condition, properties or operations of such Guarantor, (b) materially adversely affect the transactions contemplated by this Agreement of Guaranty and their ability to perform their respective obligations hereunder, or (c) adversely affect the validity or enforceability of this Agreement of Guaranty. Guarantor represents and warrants that to the best of his knowledge, after due inquiry and investigation, he is not in violation of or default with respect to any order, writ, injunction, decree or demand of any such court or Governmental Authority.

6.     Guarantor represents and warrants that: (a) all consents, approvals, orders or authorizations of, or registrations, declarations or filings with any Governmental Authority which are required in connection with the valid execution and delivery of this Agreement of Guaranty by him, and the carrying out or performance of any of the transactions required or contemplated hereunder to be performed by him, have been obtained or accomplished and are in full force and effect; and (b) to the best of his knowledge, after due inquiry and investigation, all timely consents, approvals, orders or authorizations of, or registrations, declarations or filings with any Governmental Authority which are required in connection with the making of the Loan to the Borrowers have been obtained or accomplished and are in full force and effect, or can be obtained by the Borrowers.

7.     Guarantor represents and warrants that: (a) the assumption by him of his obligations hereunder will result in material benefits to him or her, and (b) this Agreement of Guaranty when executed and delivered by him or her will constitute a legal, valid and binding obligation on his or her part, enforceable against him or her in accordance with its terms, subject, as to enforcement of remedies only, to any applicable bankruptcy, insolvency, reorganization, moratorium, similar laws of general application at the time in effect and general principles of equity.

8.     Guarantor represents and warrants that he or she has duly filed or caused to be filed all Federal, state and municipal tax reports and returns which are required to be filed by him or her and has paid or made adequate provision for the payment of, all taxes, assessments, fees and other governmental charges which have become due pursuant to said returns or otherwise pursuant to any assessment received by him or her, except such taxes, if any, as are being contested in good faith by him or her by appropriate proceedings (provided that such contest shall not result in a lien being placed on any of his properties or assets or result in any of his or her properties or assets being subject to loss or forfeiture as a result of nonpayment during the continuance of such contest) and for which he or she has maintained adequate reserves or accrued the estimated Obligation on his or her balance sheet for the payment thereof.

2

9.     Guarantor represents and warrants that he or she has good and marketable title to all of the properties and assets listed in the most recent financial statements delivered to the Lender on or prior to the date hereof (except as otherwise expressly described in said financial statements, and except those properties and assets disposed of since the date of said financial statements in the ordinary course), and that all such statements were materially correct.

10.     Guarantor represents and warrants that: (a) he or she is not in violation of or default in any material respect with respect to any applicable laws and/or regulations which materially and adversely affect his or her business, financial condition, property or operations; and (b) he or she is not in violation of or default (nor is there any waiver in effect which, if not in effect, would result in a violation or default) in any material and adverse respect under any indenture, evidence of indebtedness, loan or financing agreement or other agreement or instrument of whatever nature to which he or she is a party or by which he or she is bound, a default under which might have consequences that would materially adversely affect his or her respective business, financial condition, properties or operations.

11.     Guarantor waives notice of acceptance of this Agreement of Guaranty and notice of any Obligation of the Borrowers to which it may apply, and waive notice of default, non-payment, partial payment, presentment, demand, protest, notice of protest or dishonor and all other notices to which Guarantor might otherwise be entitled, or which might be required by law and required to be given by the Lender.

12.     Guarantor's Obligation hereunder shall be in no way affected, diminished or released by: (a) any amendment, change or modification of the provisions of the Note or any other Loan Document made to or with the Lender by the Borrowers; (b) any extensions of time for performance required thereby; (c) the release of the Borrowers from performance or observation of any of the agreements, covenants, terms or conditions contained in any of said instruments by the Lender or by operation of law, whether made with or without notice to said Guarantor; (d) acceptance by the Lender of additional security or any increase, substitution or changes therein; or (e) the release by the Lender of any security or any withdrawal thereof or decrease therein.

13.     Without incurring responsibility to the Guarantor and without impairing or releasing the obligations of the Guarantor hereunder, the Lender may at any time and from time to time without the consent of, or notice to the Guarantor, upon any terms or conditions and in whole or in part: (a) change the manner, place or terms of payment and/or change or extend the time for payment or renew or alter, any Obligation of the Borrowers or any security therefor, and the guaranty herein made shall apply to the Liabilities of the Borrowers as so changed, extended, renewed or altered; (b) sell, exchange, release, surrender, realize upon or otherwise deal with in a commercially reasonable manner and in any order any property by whomsoever at any time pledged, mortgaged or in which a security interest is given to secure, or howsoever securing, the Liabilities of the Borrowers; (c) exercise or refrain from exercising any rights against the Borrowers or others (including the Guarantor) or against the security, or otherwise act or refrain from acting; (d) settle or compromise any Obligation of the Borrowers, dispose of any security therefor, with or without consideration, or any Obligation incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any Obligation of the Borrowers (whether due or not) to creditors of the Borrowers other than the Lender and the Guarantor; and (e) apply any sums by whomsoever paid or howsoever realized to any Obligation of the Borrowers.

14.     No invalidity, irregularity or unenforceability of all or any part of any Obligation of the Borrowers or the impairment or loss of any security therefor, whether caused by any actions or inactions of the Lender, or otherwise, shall affect, impair or be a defense to this Agreement of Guaranty. The lack of enforceability of this Agreement of Guaranty against any Guarantor shall not relieve any other Guarantor of his obligations hereunder.

15.     Upon the occurrence of an "Event of Default" or "default" as such terms are described and/or defined in the Note, the Lender shall be immediately entitled: (a) to enforce the obligation of Guarantor hereunder including seeking immediate payment from Guarantor of all amounts due under the Note; and (b) to set-off any money owed by the Lender in any capacity to any Guarantor or any property of any Guarantor in the possession of the Lender against any of the monetary obligations of said Guarantor(s) to the Lender under this Agreement of Guaranty, without first giving notice to said Guarantor(s), and the Lender shall be deemed to have exercised such right of set-off and to have made a charge against any such money or property

3

immediately upon the occurrence of such Event of Default, even though the actual book entries may be made at some time subsequent thereof. The Lender is hereby granted a security interest in all such money and property held by it, which security interest shall be a first priority perfected security interest in favor of the Lender as a result of the Lender's possession of the money and/or other property of the Guarantor. None of the rights of the Lender described in the immediately preceding sentence is intended to diminish or limit the Lender's "set-off rights".

16.     Upon any default by the Guarantor with respect to any of the covenants and agreements under this Agreement of Guaranty, the Lender may (but shall not be so obligated), without waiving or releasing the Guarantor from any of his obligations hereunder, and without prejudice to any other right or remedy of the Lender hereunder, whether or not expressly set forth herein, perform such covenant or agreement in respect of which there shall be a default hereunder and in that regard pay such money as may be required or as the Lender may reasonably deem expedient. Any such monies paid by the Lender as aforesaid, together with interest thereon at the rate then applicable (or which would then have been applicable) under the Note shall be obligations of the Borrowers under the Note which shall be due and payable by the Guarantor to the Lender for the account of the Borrowers on demand.

17.     Guarantor hereby waives any right or claim of right to cause a marshalling of the Borrowers' assets or to cause the Lender to proceed against any of the security or collateral held by the Lender before proceeding against said Guarantor, and Guarantor hereby waives any and all legal requirement that the Lender shall institute any action at law or in equity against the Borrowers, or anyone else, with respect to the Note or with respect to any other Loan Document or with respect to any security held by the Lender, as a condition precedent to bringing any action against said Guarantor upon this Agreement of Guaranty.

18.     Guarantor hereby irrevocable and unconditionally waives and relinquishes any and all statutory, contractual, common law, equitable or other claims and rights: (a) to seek reimbursement, contribution, indemnification, set-off or other recourse from or against the Borrowers in connection with any payments made by such Guarantor under this Agreement of Guaranty; and (b) to be subrogated to the Lender's rights under the Loan Documents upon such Guarantor's performance under this Agreement of Guaranty.

19.     Until termination, this Agreement of Guaranty is made and shall continue as to any Obligation of the Borrowers to the Lender without regard to the existence of other collateral or security or guaranties, if any, or to the validity or effectiveness of any or all thereof; and any or all such collateral and security and guaranties may, from time to time, without notice to or consent of the Guarantor, be sold, released, surrendered, exchanged, settled, compromised, waived, subordinated or modified, with or without consideration, on such terms and conditions as may be acceptable to Lender without in any manner affecting or impairing the Obligation of the Guarantor. The Guarantor's obligations under this Agreement of Guaranty shall extend to any and all monies advanced by the Lender pursuant to the Loan Agreement and any other Loan Document.

20.     Guarantor covenants and agrees that he or she: (a) shall keep and maintain complete and accurate books and records in accordance with generally accepted accounting principles, consistently applied, and (b) shall furnish to the Lender within ten (10) days after request, such further detailed information covering the financial affairs of the Guarantor, as may be reasonably requested by the Lender. In addition, in the event that any default, adverse litigation or material adverse change occurs in the financial condition of the Guarantor, then the Guarantor shall promptly notify the Lender of such occurrence. Guarantor further covenants and agrees that he or she shall furnish or cause to be furnished to the Lender, annual personal financial statements (including, statements of net worth and contingent liabilities) at his or her own cost and expense, as soon as available, but in any event within ninety (90) days after the close of each calendar year(s) during the term of the Loan. Such financial statements shall be in form and substance satisfactory to the Lender and shall be prepared in accordance with sound accounting practices. Guarantor further covenants and agrees that he or she shall furnish to the Lender any other financial information reasonably requested by the Lender.

21.     Guarantor covenants and agrees that he or she shall prepare and timely file all Federal, state and municipal tax returns required to be filed by him or her, and he or she shall promptly pay and discharge all taxes, assessments and other governmental charges or levies imposed upon him or her, or in respect of any of his respective properties and assets and all lawful claims, before the same shall become in default. Guarantor further covenants and agrees

that he or she shall submit to the Lender: (a) within ninety (90) days of filing following the end of each calendar year (subject to appropriate extensions), copies of all Federal and state income tax returns, as filed; and (b) upon request, receipted bills showing payment of all real property taxes, assessments, governmental charges or levies and lawful claims with respect to his or her respective properties and assets.

22.     Guarantor covenants and agrees that he or she shall indemnify, protect, defend and save harmless the Lender as well as the Lender's directors, officers, employees, agents, attorneys and shareholders (hereinafter referred to collectively as the "Indemnified Parties" and individually as an "Indemnified Party") from and against any and all losses, damages, expenses or liabilities of any kind or nature and from any suits, claims, or demands, including reasonable counsel fees incurred in investigating or defending such claim, suffered by any of them and caused by, relating to, arising out of, resulting from, or in any way connected with the Loan and the transactions contemplated herein; provided, however, the Guarantor shall not be obligated to indemnify, protect, defend and save harmless an Indemnified Party, if the loss, damage, expense or Obligation was caused by or resulted from said Indemnified Party's own gross negligence or willful misconduct. In case any action shall be brought against an Indemnified Party based upon any of the above and in respect to which indemnity may be sought against the Guarantor, said Indemnified Party against whom such action was brought, shall promptly notify the Guarantor in writing, and the Guarantor shall assume the defense thereof, including the employment of counsel selected by the Guarantor and reasonably satisfactory to said Indemnified Party, the payment of all costs and expenses and the right to negotiate and consent to any settlement. Upon reasonable determination made by said Indemnified Party against whom such action was brought, said Indemnified Party, shall have the right to employ separate counsel in any such action and to participate in the defense thereof; provided, however, that said Indemnified Party shall pay the costs and expenses incurred in connection with the employment of separate counsel. The Guarantor shall not be liable for any settlement of any such action effected without their consent, but if settled with the Guarantor's consent, or if there is a final judgment for the claimant in any such action, the Guarantor agrees to indemnify and save harmless said Indemnified Party against whom such action was brought, from and against any loss or Obligation by reason of such settlement or judgment. The provisions of this Paragraph 20 shall survive the termination of the Loan and the repayment of the indebtedness evidenced by the Note.

23.     If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment for, or on account of, any of the Liabilities of the Borrowers, and the Lender repays all or part of said amount by reason of: (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim affected by the Lender with any such claimant (including the Borrowers), then, and in such event, the Guarantor agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the Guarantor, notwithstanding the cancellation of any note or any other instrument evidencing any Obligation of the Borrowers, and the Guarantor shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.

24.     Settlement of any claim by the Lender against the Borrowers, whether in any proceeding or not, and whether voluntary or involuntary, shall not reduce the amount due under the terms of this Agreement of Guaranty except to the extent of the amount paid by the Borrowers in connection with the settlement.

25.     No delay on the part of the Lender in exercising any of its rights, powers or privileges or partial or single exercise thereof under the Note, this Agreement of Guaranty or any other document made to or with the Lender by the Borrowers shall operate as a waiver of any such privileges, powers or rights. No waiver of any of its rights hereunder, and no modification or amendment of this Agreement of Guaranty, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, by a duly authorized officer, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the Guarantor to the Lender in any other respect at any other time.

26.     All rights, powers and remedies afforded to the Lender by reason of this Agreement of Guaranty are separate and cumulative remedies and no one of such remedies whether or not exercised by the Lender shall be deemed to exclude any of the other remedies

available to the Lender nor prejudice availability of any other legal or equitable remedy which
the Lender may have with respect to the Loan.

27.    This Agreement of Guaranty shall be governed by and construed and interpreted
in accordance with, the laws of the State of New Jersey and no defense given or allowed by the
laws of any other state or country shall be interposed in any action or proceeding hereon unless
such defense is also given or allowed by the laws of the State of New Jersey. The Lender may
bring any action or proceeding to enforce or arising out of this Agreement of Guaranty in any
court of competent jurisdiction. If the Lender commences such an action in any court located in
the State of New Jersey, or any United States District Court in New Jersey, each of the Guarantor
hereby agrees that he will submit to the personal jurisdiction of such courts and will not attempt
to have such action dismissed, abated or transferred on the ground of forum non conveniens, and
in furtherance of such agreement, each of the Guarantor hereby agrees and consents that without
limiting other methods of obtaining jurisdiction, personal jurisdiction over him and/or her in any
such action or proceeding may be obtained within or without the jurisdiction of any court located
in New Jersey and that any process or notice of motion or other application to any such court in
connection with any such action or proceeding may be served upon the Guarantor by registered
mail to or by personal service at the last known address of each Guarantor; provided, however,
that nothing contained herein shall prohibit the Guarantor from seeking, by appropriate motion,
to remove an action brought in New Jersey state court to the United States District Court for the
District of New Jersey. If such action is so removed, however, the Guarantor shall not seek to
transfer such action to any other district, nor shall the Guarantor seek to transfer to any other
district any action which the Lender originally commences in such federal court. Any action or
proceeding brought by the Guarantor arising out of this Agreement of Guaranty shall be brought
solely in a court of competent jurisdiction located in the County of Essex, State of New Jersey,
or in a United States District Court in New Jersey. The Guarantor hereby waives any right to
seek removal of any action or proceeding other than as permitted according to this Paragraph 25.

28.    This Agreement of Guaranty shall be binding upon and inure to the benefit of and
be enforceable by the parties hereto and their respective successors, assigns, heirs, executors,
administrators and legal representatives.

29.    This Agreement of Guaranty shall terminate upon the termination of the Note in
accordance with its terms. The Borrowers or the Guarantor may terminate this Agreement of
Guaranty and the Note and all other obligations of the Borrowers or the Guarantor to the Lender
under the Note or this Agreement of Guaranty, by paying to the Lender all sums due and owing
to the Lender hereunder and under the Note or this Agreement of Guaranty.

30.    Unless otherwise indicated differently, all notices, payments, requests, reports,
information or demands which any party hereto may desire or may be required to give to any
other party hereunder, shall be in writing and shall be personally delivered or sent by courier or
first-class certified or registered United States mail, postage prepaid, return receipt requested,
and sent to the party at its address appearing above. All notices, payments, requests, reports,
information or demands so given shall be deemed effective upon receipt or, if mailed, upon
receipt or the expiration of the third day following the date of mailing, whichever occurs first,
except that any notice of change in address shall be effective only upon receipt by the party to
whom said notice is addressed. A failure to send the requisite copies does not invalidate an
otherwise properly sent notice to the Guarantor and/or the Lender.

31.    In case of any proceedings to collect any liabilities of the Guarantor to the Lender,
the Guarantor shall pay all costs and expenses of every kind for collection, sale or delivery of
any collateral, or assets or properties of the Guarantor, including reasonable attorneys' fees, and
after deducting such costs and expenses from the proceeds of sale or collection, the Lender may
apply any residue to the liabilities of the Guarantor who shall continue to be liable for any
deficiency, with interest at the rate provided for in the Note.

32.    In all references herein to any parties, persons, entities or corporations, the use of
any particular gender or the plural or singular number is intended to include the appropriate
gender or number as the text of the within instrument may require.

33.    Guarantor hereby acknowledges and agrees that (i) he or she shall have the sole
responsibility for obtaining from the Borrowers such information concerning the Borrowers's
financial condition and business operations as the Guarantor may require, and that the Lender
has no duty at any time to disclose to the Guarantor any information relating to the business

operations or financial condition of the Borrowers and (ii) he or she has received a copy of the Note.

34.    This Agreement of Guaranty may be executed in any number of counterparts, all of which, when taken together, shall constitute one instrument.

35.    The Guarantor shall not transfer, convey, sell or otherwise dispose of all or any portion of their respective ownership interests in the Borrowers and shall not otherwise change the existing ownership structure of the Borrowers without the prior written consent of the Lender.

36.    WAIVER OF JURY TRIAL. THE GUARANTOR AND THE LENDER HEREBY WAIVE ANY AND ALL RIGHTS THAT THEY MAY NOW OR HEREAFTER HAVE, POSSESS AND ENJOY UNDER THE LAWS OF THE UNITED STATES OF AMERICA OR ANY STATE, TO A TRIAL BY JURY OF ANY AND ALL ISSUES ARISING EITHER DIRECTLY OR INDIRECTLY IN ANY ACTION OR PROCEEDING BETWEEN THE GUARANTOR AND THE LENDER OR THEIR SUCCESSORS AND ASSIGNS, OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT OF GUARANTY, IT IS INTENDED THAT SAID WAIVER OF JURY TRIAL SHALL APPLY TO ANY AND ALL DEFENSES, RIGHTS, AND/OR COUNTERCLAIMS IN ANY ACTION OR PROCEEDING. THE GUARANTOR AND THE LENDER RECOGNIZE THAT ANY DISPUTE ARISING IN CONNECTION WITH THE LOAN IS LIKELY TO BE COMPLEX AND CONSEQUENTLY THEY WISH TO STREAMLINE AND MINIMIZE THE COST OF THE DISPUTE RESOLUTION PROCESS BY AGREEING TO WAIVE THEIR RIGHTS TO A JURY TRIAL.

IN WITNESS WHEREOF, Guarantor has caused this Agreement of Guaranty to be duly executed and delivered, all as of the day and year first above written.

GENESIS, a limited partnership:

By: _____
Authorized Agent of
Genesis, a limited partnership

ACKNOWLEDGEMENT

STATE OF NEW JERSEY   :
                      : ss.
COUNTY OF Bergen      :

BE IT REMEMBERED, that on this 5 day of October 09 before me, the subscriber, personally appeared BRUCE FIXELLE, who, I am satisfied, is the person who signed the within instrument, and he thereupon acknowledged that he signed and delivered the same as his voluntary act and deed, for the uses and purposes expressed therein.

CATHY J. FOY
Notary Public - New Jersey
Passaic County
My Commission Expires February 14, 2013

ACKNOWLEDGEMENT

STATE OF MARYLAND    :
                     : ss.
COUNTY OF Montgomery :

BE IT REMEMBERED, that on this 5th day of Oct before me, the subscriber, personally appeared HOWARD KRA, who, I am satisfied, is the person who signed the within instrument, and he thereupon acknowledged that he signed and delivered the same as his voluntary act and deed, for the uses and purposes expressed therein.

DAVIS KIYONAGA
Notary Public-Maryland
Montgomery County
My Commission Expires
October 29, 2011